PRESIDENT, DIRECTORS, &c. OF DEDHAM BANK *vs.* MASON RICHARDS & others.

In an assignment of property in trust for the payment of creditors, whose names and the amount of whose claims were inserted in a schedule, it was provided that corrections might be made in the schedule, and such items and amounts be afterwards inserted therein as should conform to the actual state of facts : The claim of K. who first executed the assignment, was inserted in the schedule, as " about $ 4500:" After other creditors had executed the assignment, K. made and proved claims against the assignor to the amount of $ 5867. *Held,* that as against the other creditors, K. was entitled to a dividend on the latter sum.

Where an assignment is made for the benefit of such creditors only as shall become parties thereto within a specified time, no creditor can have the benefit thereof, who does not become a party within that time.

BILL in equity. The bill set forth that on the fifth of November, 1835, Timothy Gay was indebted to the plaintiffs on his note for $ 1000, and that he on that day, by an indenture tripartite made between him, of the first part, Mason Richards,

of the second part, and certain creditors, &c. of Gay, who executed the indenture, of the third part, assigned to said Richards certain property in trust to convert the same into money, and after paying the expenses attending the trust, then to apply the residue of the trust funds to the payment and discharge of the c aims of the parties of the third part, whose names, claims and liabilities were set forth or referred to in a schedule annexed to the indenture (marked A) ratably until paid in full ; and after paying the claims in that schedule, then to pay the balance to the creditors mentioned in another schedule (marked B) annexed to the indenture ; and the surplus, if any, to Gay's order ; and that the creditors, who became parties to the indenture, thereby released said Gay from all their claims mentioned in said schedules : That the plaintiffs became parties to the indenture, on said 5th of November, by executing the same ; that their claim against Gay was set forth in the schedule A, and that they thereby became entitled to payment of $ 1000, according to the terms of the indenture, as soon as sufficient money was received by the trustee to pay the creditors in that schedule : That Richards assumed the trust, by executing the indenture, November 5th, 1835, and immediately entered on the execution of it, and has since converted all the trust property into money : And the plaintiffs aver that there is sufficient in his hands to pay all the demands in schedule A, in full, after paying the just expenses of the trust : That there was one demand in said schedule, described thus : " Amount due to Theodore T. Kimball on notes and account about $ 4500 ;" and another, described thus : " Three notes due the President, Directors & Company of the Washington Bank, signed by said Gay as principal, and Theodore T. Kimball as surety, for $ 2500 and interest — about $ 2700 " : That said Kimball claims, under the assignment, not only the sum of $ 4500, but a larger sum, the precise amount of which the plaintiffs do not know ; and that the Washington Bank claims, in like manner, $ 2700 : That said Richards allows these claims and retains the trust funds for the purpose of paying, satisfying and indemnifying against them, and gives out that he shall apply the trust funds for that purpose ; and that he, Kim-

ball, and the Washington Bank combine so to retain and apply the trust funds.

The plaintiffs say that the Washington Bank is not entitled to receive any thing from the trust property, towards their claim, and that Kimball is not entitled to receive more than $ 4500 : That the plaintiffs became parties to the assignment, after Kimball, and relying upon the representation and warranty, contained in the schedule and assignment, that Kimball's claim did not exceed $ 4500, and might be proved to be less : That though Richards has received sufficient to pay the said demands and liabilities, he has never paid said sum of $ 1000 due to the plaintiffs, though they have repeatedly requested him to pay it ; but that he, combining and confederating with Kimball and the Washington Bank, to withhold from the plaintiffs their share of the assigned property, refuses to comply with their request.

The prayer of the bill was, that Richards might answer, and set forth an account of the trust, and of all moneys paid and received, and be compelled to execute the trust, and pay the plaintiffs the sum of $ 1000, with interest, or such other sum, &c. ; and that they might have such further or other relief as equity requires. There was also a prayer for a subpoena against Richards, Kimball and the Washington Bank, that they might answer the bill and abide the order and decree of the court.

Richards, in his answer, admitted the statements in the first part of the plaintiff's bill ; and he filed a copy of the indenture, mentioned in the bill, and of the schedules annexed thereto, as part of his answer. He denied that he had converted all the trust property into money, or that he had received money sufficient to pay in full all the sums mentioned in schedule A. He also denied that the whole property assigned to him was sufficient to pay those claims in full. And he averred that he had received in money, as assignee, only $ 9538·16, from the trust property ; that he paid the plaintiffs, on the 25th of October, 1837, $ 500 in part of their said claim. He admitted that Kimball's claim was entered on the schedule annexed to the indenture, as " about $ 4500," and he then set forth the particulars of Kimball's claims, on notes and accounts, amounting to

$ 5867·27, which he averred that he had no good reason to doubt were justly due to him from Gay ; and he prayed the court to instruct him what part of said claims should be allowed to Kimball as a creditor on schedule A.

The answer of Richards further admitted that the Washington Bank, as creditors under schedule A, had claimed of him payment of three notes, amounting to $ 2500 and interest thereon ; but he averred that the bank never became party to the indenture, and that he therefore had declined to allow said claim, without the instruction of the court.

Kimball, in his answer, admitted all the material facts respecting the assignment by Gay, as set forth in the bill, and prayed the court to receive as part of his answer, the copy of the assignment annexed to the answer of Richards. He also admitted the claim of the plaintiffs as set forth in the bill. But he averred that he did not know that Richards had converted all the trust property into money, but believed that he had not ; and that he did not know whether Richards had sufficient in his hands to pay all the demands in schedule A, after paying the expenses of the trust. He also admitted that his claim and that of the Washington Bank were entered in schedule A, as set forth in the bill, and that he claims of Richards to be allowed dividends on a larger sum than $ 4500 ; and he set forth a list of his claims on Gay, similar to that set forth in the answer of Richards, and also stated specially the consideration of each item of his said claims, averring that the amounts claimed by him were justly due, and not paid. He denied that the Washington Bank had any claim under the assignment, upon the three notes, because they had never become a party to the instrument ; which, if they had done so, would have discharged Gay, and consequently would have discharged him ; but he averred that he was, and always had been, willing, if said bank will give up those notes to him, and discharge him therefrom, to give the bank an order to receive from Richards the dividends to which he (Kimball) would then be entitled on the notes held by the Washington Bank.

The answer of the Washington Bank admitted all the material facts relative to Gay's assignment and the execution of it,

and also the claim of the plaintiffs, as set forth in the bill, but denied that the plaintiffs were entitled to be paid to the exclusion of the Washington Bank, whose claims on the trust fund stood on the same footing as that of the plaintiffs. The answer also stated that Gay, when the assignment was made, owed the Washington Bank $2500 on three notes for money lent, copies of which are thereto annexed, and on which Kimball was surety ; that one of the leading objects of the assignment was to secure the payment, in proportion to other demands on schedule A, of these three notes, and to indemnify Kimball, the surety thereon, and that for this purpose the demands of the Washington Bank were entered on schedule A, in the manner before set forth ; that Kimball, for whose especial protection, as indorser and surety of Gay, the assignment was made, and whose duty it was to take up these three notes, became a party to the assignment, and that if he had paid said notes, would have been entitled to the dividend on them ; but that he had not paid them, and that Richards, therefore, should retain the dividend in respect to these notes, for the use and benefit of any party who may be the lawful proprietor and holder of the notes ; and that the great object of the schedule and of the parties, was to designate the particular demands to be paid, and not the persons to whom such payment was to be made ; as they could not be known when the schedule was made : that said bank have relied on the assignment, for payment of said notes, hoping to receive pay from the assignee, and have taken no steps to enforce the collection of them, either against Gay or Kimball, and have always been ready to do any proper acts to affirm the trust, in order to avail themselves of the trust fund ; and to this end they have, from time to time, required said Richards to pay to them such sums as they were entitled to receive, in respect to said three notes.

The answer admitted that said bank had not become party to said assignment, but averred that by Kimball's becoming a party thereto, they believed all was done which was necessary to secure to said bank their distributive share of the trust fund, if they should be holders of said notes when such share might be payable

The answer concluded thus : "If the Washington Bank have been mistaken in these views, they have been misled by not un derstanding the true intent and meaning of the case of *Ward* v *Lewis*, 4 Pick. 518 ; and if, in revising the opinion in that case this honorable court should come to the conclusion that the Wash ington Bank, in order to have the benefit of the trust, must pre- viously have executed the indenture, then they pray the court to be permitted to execute it, and if necessary, that the time limited in the assignment for signing it may be enlarged, so as to enable them to derive the benefit intended from the trust fund."

The answers of each of the defendants denied the charge of confederacy, and also that the schedule A, annexed to the as- signment, contained a representation or warranty that Kimball's claim did not exceed $ 4500.

The provision, in the assignment, respecting the amounts of the several claims in schedule A, and respecting the correction of mistakes and the supplying of omissions therein, is set forth in the opinion of the court.

By the terms of the indenture of assignment, two calendar months from the date thereof, and no longer, were allowed to the creditors for the purpose of executing it : " Provided, how- ever, that if said time shall after its expiration, be declared by any individual of the first or second part, to have been insuffi- cient, or unreasonably short, he may extend the same from time to time, as often and as long as he shall think reasonable or ex- pedient, but so, nevertheless, that said time shall not exceed, in the whole, six calendar months from the date hereof."

The case came before the court on the bill and answers.

*Crowninshield*, for the plaintiffs, argued that it would be a fraud on the creditors, who executed the assignment after Kim- ball, to allow him to receive more than the amount which he placed on the schedule. The difference between that amount and the sum he now claims is much greater than that in *Browne* v. *Weir*, 5 S. & R. 401, and cannot be regarded as " about $ 4500."

In *Ward* v. *Lewis*, 4 Pick. 518, relied on by the Washington Bank, there was no stipulation in the assignment, as there was

in the present case, that it should be executed by the creditors for whose benefit it was made. The present assignment being strictly *inter partes*, and the time for creditors to execute it having long since elapsed, the Washington Bank has no claim on the trust fund. *Phenix Bank* v. *Sullivan*, 9 Pick. 410. *Bradford* v. *Tappan*, 11 Pick. 76. *Battles* v. *Fobes*, 21 Pick. 239.

*Sewall*, for Richards & Kimball. The intention of Gay was to secure Kimball in full; and the words " about $ 4500," were merely descriptive, and did not restrict the claim to that amount. There was also a provision, in the assignment itself, for a correction of the schedule by inserting such amounts as should conform to the actual state of facts. But if there had been no such provision, Kimball would have had a right to his full claim. *Browne* v. *Weir*, 5 S. & R. 401.

As to the claim of the Washington Bank, *Sewall* adopted the argument of the plaintiffs' counsel.

*Cooke*, for the Washington Bank, submitted the case on the answer of the bank to the plaintiffs' bill.

WILDE, J. * By the bill and answers two questions have been submitted to the consideration of the court in relation to the claims of the Washington Bank, and of Theodore T. Kimball, on the trust fund in the hands of Mason Richards the trustee, against whom the plaintiffs seek to enforce their claim.

The bill sets out an assignment made by Timothy Gay, an insolvent debtor, to the said Richards, in trust for the benefit of his creditors, and claims payment of the plaintiffs' demand in full, they being preferred creditors.

The bill alleges that the trustee has received sufficient money from the sale of the trust property, to pay off all the debts due to the preferred creditors. This allegation the trustee denies in his answer, and he states the amount received by him from the trust property, and the amount of claims of the preferred creditors, including the claims made upon him by the said Kimball and the Washington Bank.

---

* The chief justice did not sit in this case.

In the schedule of the debts of the preferred creditors, that of Kimball is set down as amounting to *about* $4500. But it now appears that his claims actually amount to the sum of $5867·27. It is not denied by the plaintiffs' counsel, that the amount was justly due to Kimball, at the time when he became a party to the assignment ; but they contend that his claim is to be limited to the amount inserted in the schedule, or at most to a small amount over ; that the plaintiffs became a .party to the assignment after Kimball, and had a good right to rely on the accuracy of the schedule. But on looking into the assignment, it appears very clear that. no reliance could be placed on the accuracy of the schedule.

It was expressly declared in the assignment, that it might not be practicable to make the schedules entirely full and accurate ; and provision was made, that the parties might, " for the purpose of supplying omissions and correcting mistakes and misstatements, at any time by joint consent, &c., make such corrections and alterations in the schedule, and rectify and insert such items, names and amounts therein, in conformity with justice and the actual state of facts, as shall tend to carry into effect their fair intentions. And it is also agreed, that the specifying of any claim or liability, in any of said schedules, shall not prevent any of the parties of the first or second parts from calling in question or litigating the amount of the same, or any part thereof ; and if any claim or liability of any party hereto shall have been stated as greater or less than it really is, such party shall, as respects such claim or liability, be entitled to the benefit of these presents, in manner herein before stated, upon and for, and only upon and for, the amount which may be found justly due thereon."

From these provisions in the assignment, it conclusively ap pears that the parties did not rely upon the accuracy of the schedules. They were probably made in haste, and were not supposed to be accurate. The claims, therefore, of the creditors were left open to future adjustment, so that each creditor should be entitled to the allowance of the full amount due, and no more.

If then there were any doubt as to the correctness of the de-cision in the case of *Browne* v. *Weir*, 5 S. & R. 401, cited by the defendants' counsel, the doubt in the present case would be immaterial.  We perceive however no good reason for doubt-ing the correctness of that decision.

In regard to the claim of the Washington Bank, it seems very clear, that as they have not become a party to the assignment, they are not, by its terms, entitled to any allowance out of the trust fund.  The assignment contains a clause for the release and discharge to Gay from all claims proved under the assignment, whether fully paid, or only in part.  But the Washington Bank claims the benefit of the assignment without peforming its con-dition by releasing Gay ; which cannot be allowed.

Their demand is against Gay as principal, and Kimball as surety.  As Kimball became a party to the assignment, he might have proved the demand, if it had been assigned to him by the bank ; and he states that he offered so to do, if the bank would discharge him, and that he would give them an order for the dividends to which he might be entitled on this demand.  The Washington Bank did not accede to this proposal, so that if their claim on the trust fund should be allowed, and they should not receive payment in full, they would have a claim on Gay and Kimball for the balance, against the clear meaning and ex-press language of the assignment.

But if there were no provision for the release of Gay, still the claim in question could not be admitted.  By the terms of the assignment, no creditor's claim can be allowed, unless he became a party thereto, within the time stipulated for that purpose.

The counsel for the Washington Bank, in support of their claim, relies on the case of *Ward* v. *Lewis*, 4 Pick. 518.  But in that case, Ward and the other preferred creditors were not, by the terms of the assignment, required to become parties there-to.  The trustees were directed to pay, in the first place, all the demands of the preferred creditors in full, and to pay next the demands of the parties of the third part, in said indenture of assignment mentioned, in proportions equal to their respective

demands. In that case, a trust had been created for the benefit of the preferred creditors, and the court held, on sound principles undoubtedly, that those creditors had a right to affirm the trust, and claim the benefit of it, without becoming parties to the indenture, that not being required by the terms by which the trust was created. This decision, therefore, has no bearing on the present question. The trust, in the present case, was created for the benefit of those creditors only who should become parties to the trust deed ; and it is very clear, therefore, that the claim of the Washington Bank, although it is included in the schedule of preferred claims, cannot be allowed.

*Kimball's claim for* $ 5867·27 *allowed, and the case referred to a master, to state an account.*